UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM HENRY HAMMAN
& THE CLASS "DUAL
ENROLLMENT STUDENTS",**
  Plaintiffs;

v.               Case No.: 6:20-cv-1279-Orl-41LRH

**THE UNIVERSITY OF CENTRAL**  Plaintiff's Motion for TRO
**FLORIDA BOARD OF TRUSTEES**  and Supporting Memorandum
 **In their individual and
 official capacities,**
  Defendants
_____/

### PLAINTIFFS' MOTION FOR TRO AND MEMORANDUM OF LAW

  Plaintiffs William Henry Hamman and the class of Dual Enrollment students, having filed our amended complaint seeking declaratory judgement and injunctive relief for the same for violation of the Fourteenth Amendment, move this court pursuant to FRCP 65 & local rule 4.05 for a TRO restraining UCF to immediately grant the due process that the class is due pursuant to *Carey v. Piphus* as well as such equitable corrective relief as the Court sees fit and an order to show cause why the injunctive relief should not issue if there is any such cause.

  *Carey v. Piphus* shows that I had an "absolute" right to a fair and meaningful opportunity to be heard prior to deprival of these liberty and property interests inherent in the program, and the fact that UCF has been entrusted with custodial control over that liberty and property is clearly obvious and written in plain language.   As my right to the property and liberty interests are only accorded at the pleasure of UCF, it is obvious that UCF has custodial control over those constitutional interests of which I am the rightful holder.

<< 1 >>

What is less obvious but just as "absolute" is the fact that UCF has also been entrusted with custodial control over another constitutional interest of mine, that of due process itself; a constitutionally protected interest even in the absence of any other injury.[1] What is less obvious is that having an "absolute" right to due process means I am the rights-holder of the interest of that particular constitutional right - the "absolute" [2] right to due process which has been articulated in the analogous context of *Carey* by the Supreme Court that includes particular procedural protections which ensure my due process rights are accorded whenever the nexus of underlying interests is at stake which includes the statutorily-granted basic educational benefit.

Protection of that constitutional right in and of itself, the right to that meaningful opportunity to be heard prior to the deprivation of the program, is what this motion is about; and since we did not assert that constitutional right as a particularized right for which we sought protection in the original TRO we thus retain the right to seek it's protection through this TRO which has become necessitated by events subsequent to the relevant pleadings.

To be clear, the right we seek constitutional protection of in this TRO is due process itself, the "absolute" right for the immediate relief of a meaningful opportunity to be heard prior to any further deprivation of the underlying interests in liberty and property; an opportunity that comports with the procedural protections articulated by the Supreme Court in *Carey* on page 249.

**THE GROUNDS UPON WHICH I BRING THIS MOTION FOR TRO ARE:**

---

[1] "Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury."
*Carey v. Piphus,* 424 U.S. 247, 266   (internal citations omitted)

[2] Scare quotes around the term "absolute" is a faithful quotation of *Carey*, as the Supreme Court used scare quotes each time they referred to the right as being "absolute" in the opinion.

*Ex parte* relief is necessary here. An *ex parte* TRO is warranted where the facts show the irreparable loss, injury or damage will result before the defendant can be heard in opposition. *See* Fed. R. Civ. P/ 65(b). Defendants have been well noticed of this dispute and these proceedings, and have been noticed of this motion prior to application. It is not the notice part of *ex parte* issuance which is required for the sake of due process, it is the time aspect. As is proven herein, the procedural protections already adjudicated demand pre-deprival procedures, and I am being deprived today and will be deprived again tomorrow of the right to this pre-deprival hearing. *Goss v. Lopez* grants that a violation of constitutional dimension occurs within ten days of deprivation of the meaningful opportunity to be heard in this context and is due for nominal damages, a procedural protection which plaintiffs contend is necessary here as well.

The Dual Enrollment program includes property that has already been adjudicated as constitutionally protected in *Carey* as well as a host of other unprecedented property and liberty interests.

The protected interest in property of the basic education benefit is indisputably unseverable from the remainder of the program.

*Carey* specifies the minimum dictates of the procedural protections required by the due process clause when this nexus of interests is at stake and grants that the right to them is "absolute". The minimum dictates for procedural protections when the property interest in a state's statutorily-granted basic education benefit is at stake include (1) proper notice; (2) meaningful opportunity to present evidence and be heard; (3) in a meeting for the explicit and noticed purpose of allowing that opportunity to present evidence and be heard (4) in plain

language; (5) with no procedural barriers; (6) with some amount of legal assistance; and prior to the deprivation.

UCF continues to intentionally deprive me of those due process procedural protections that I have that "absolute" right to.   Where Principal Carey did recognize Jarius's right to due process prior to deprivation and just blew it in the execution, UCF intends to obliterate and extinguish the "absolute" right.   UCF intentionally deprives the due process which the Constitution demands be accorded to protect against unconstitutional deprivations.

The bar for proving a violation of constitutional dimension here is whether or not UCF can provide proof of notice and hearing that were accorded to me prior to Spring 2016.

Since they cannot offer what they do not have, proof of proper pre-deprival procedures, and instead are here to argue for their right to abrogate my due process rights; the likelihood of success on the merits is "absolute".

Each and every day that my "absolute" right to due process is abused I am also irreparably harmed through deprival of the property and liberty interests which are inherent in the program that my due process right is supposed to stand to defend.

Each day that the class of 1.5 million children is abused of their right to know about the true legal eligibility requirements by UCF they are unwittingly abused of the right to access of over 4,000 man-years of school.   Except they are child-years, 1.5 million children abused of 4,000 child-years of school and the lost opportunities to change their lives in incalculable and irreparable ways.

## STATEMENT OF FACTS RELEVANT TO THE ISSUE OF THIS TRO

1)      UCF did not allow me to apply for the program in Spring 2016.   This is proven on the face of pleadings because UCF has argued that their deprival of the program is justified in the face of law explicitly to the contrary, and is before you to do the same.

2)      UCF has spent four years defending their actual ability to arbitrarily deprive the program without due process from eligible students in order to save money, money they were entrusted with in the E & G fund.   This fact was directly admitted on the face of pleadings when UCF acknowledged the existence and content of the President's Office Confrontation but argued that it shouldn't matter to the case in 5DCA-2806.   The claim is made in our Petition for Mandamus and admitted in Defendant's Motion to Strike as documented in the amended complaint.

3)      UCF has policies on their web site that state that UCF exerts arbitrary discretion over the program as is well documented in the amended complaint

4)      UCF has not accorded the pre-deprival hearing granted in *Carey*.   If I am either lying to the court or too stupid to understand how words work as is the entirety of UCF's argument, then they will have proof of my due process rights being accorded in the form of proof of notice and proof of the fair hearing; and it will be a five minute hearing where UCF is absolved during the first two, then we are punitively & bindingly sanctioned within an inch of our lives for this egregious & malicious waste of the Court's time.

        THEREFORE in order to maintain the *status quo* we require this court to accord the due process interest of procedural protections which UCF custodially controls and intentionally deprives.   Without this preliminary relief there will be no possibility of effective final relief for the continued deprivation beyond this current date.   Plaintiffs seek an order granting:

A) An immediate and meaningful right to the procedural protections shown in *Carey* which stand to safeguard against the ongoing unconstitutional deprivation of the science course that was the first Dual Enrollment course deprived as is documented in pleadings and particularized in the amended complaint.

B) An immediate and meaningful right to the procedural protections shown in *Carey* which stand to safeguard against the ongoing unconstitutional deprival of the degree I have been deprived because of the unconstitutional deprivation of the Dual Enrollment courses for nearly five years.

C) The right for that hearing and all associated proceedings & pleadings to be held in plain language with enhanced procedural protections and some amount of legal assistance as granted in *Carey*.

D) The immediate remedy to the procedural injuries to the case resulting from the due process abuse through prior proceedings in which this Court has failed to accord required procedural protections.

E) The due process interests of the class to be accorded through an immediate press release from UCF apologizing for their error, correcting the public's incorrect impression of the program, and correcting the damage to the liberty interests based on my reputation by explicitly thanking me by name for my assistance in correcting it.

**MEMORANDUM OF LAW**

To be entitled to a temporary restraining order, the movant must demonstrate: (1) a substantial likelihood of ultimate success on the merits; (2) the denial of relief will result in irreparable injury; (3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) the order would serve the public interest. *Ingram*, 50 F.3d at 900.

**1)  SUBSTANTIAL LIKELIHOOD OF ULTIMATE SUCCESS ON THE MERITS**

The likelihood of ultimate success on the merits is "absolute" for each of the five pieces of relief sought in TRO, #A through #E above.   That is because that's the bar for relief here for this TRO is based on a complaint seeking the relief of vindication for abuse of the right to due process itself through nominal damages.   The bar set by *Carey* is explicit and not open for interpretation here as was the case in *Carey*.

In *Carey* the question was whether the procedural protections that were granted to Mr. Piphus during two properly noticed hearings at the earliest moment possible with the assistance of legal aid accorded his due process rights in the context.   In *Carey* the Supreme Court found it was not sufficient because "[t]he purpose of the meetings was not to determine whether Piphus had been smoking marihuana, but rather to explain the reasons for the suspension" even though that meeting did in fact include an "exchange of ideas".   In *Carey*, the fact that a student missed eight days of school without proper due process was sufficient to grant nominal damages to vindicate an "absolute" constitutional violation.

That is the bar for relief that we have to show a substantial likelihood of the ultimate success of, whether I was accorded the requisite *Carey* procedural protections whenever the statutorily-granted educational benefit is at stake that is shown in *Carey*.   As documented here,

in the complaint and the first petition for mandamus since I claim that I have been accorded no procedural protections and that UCF intentionally deprives them, **the bar for relief for ultimate success on the merits here is entirely procedural and is simply whether UCF can provide proof of notice and a *Carey*-compliant pre-deprival meeting to me prior to Spring 2016.**

**And because UCF cannot provide what they do not have, proof of notice or hearing prior to Spring 2016, the likelihood of ultimate success on the merits here is "absolute."**

(A) A claim seeking nominal damages for the deprival of the science course without due process would be successful because the science course is the first course that was deprived without the constitutionally-required properly-noticed hearing as is shown in the verified complaint, motion for preliminary injunction, first and second petitions for mandamus.

(B) A claim seeking nominal damages for each of the courses during each of the semesters that I was deprived of the program without the constitutionally-required properly-noticed hearing as is shown in the verified complaint, motion for preliminary injunction, first and second petitions for mandamus will be successful because UCF has continuously deprived me of the right to due process itself granted in *Carey* and it is in pleadings that I intended and would easily have accomplished more than typical full-time participation but was deprived without the required due process procedural protection of a properly noticed hearing each semester. With an 18/18/12 hour schedule each Fall/Spring/Summer and credit by examination due, I have been deprived of over 200 hours of transferrable college credit and would have earned two if not three Bachelors degrees.

I never received anything which could remotely be said to comport to the *Carey* protections.

(C) A claim or holding that the hearing and all associated proceedings & pleadings were to be held in plain language with enhanced procedural protections and some amount of legal assistance as granted in *Carey* will be successful because these are the procedural protections which the Supreme Court held were due to be accorded in the context of statutorily granted educational benefit.

(D) Remedy for the procedural injuries to the case resulting from the due process abuse through prior proceedings in which this Court has failed to accord required procedural protections will be successful because if not granted through the TRO as proposed in the form of TRO filed concurrently, the Eleventh Circuit will review for relief in mandamus and grant the following corrective procedural measures to accord my due process rights and that of the class:

a) The case should be reset so that the proper law and pleading procedures are applied to the case from the beginning which will result in radically different outcomes and pleading footings, each of which are ours as a matter of right. Specifically, the case should be reassigned and we should be given a First & 10 with a fresh set of downs.

b) For any of the current claims that UCF has answered for, UCF should be held to answers in their Motion to Dismiss. Any newly specified claims are certainly available for response *de novo.*

c) In order to secure my due process rights and for the reasons documented in Plaintiffs' Motion for Pro Se Clarification, I need the result of the *pro se* clarification immediately. In the alternative until such clarification is rendered, I require the procedural assistance of court appointed counsel.

**DISCUSSION - SUCCESS ON THE MERITS**

"`Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)  "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' . . . and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970), (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Justice Frankfurter concurring)).  "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 894–95 (1961) "Identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335

NECESSARY EFFECT OF THE ABOVE ON 6:20-CV-1279 TO COMPORT WITH CAREY PROTECTIONS AND DUE PROCESS REQUIREMENTS

The Court is responsible to adjust the rules of procedure to comport with any unique challenges of due process requirements arising from any context.   For instance, the courts routinely bend the usual flow of justice for persons who are incapacitated in various ways that impact their fundamental right to have their issue fairly heard in order to accord their due process requirements, or who are in contexts that seem beyond the reach of courtroom due process procedures, like a hospital room.

The Supreme Court has adjudicated the dictates of the procedural requirements in this context; but there is not a principals office in a Court, and courts do not operate like high school principals do.   But neither did high schools previously operate with the defacto force of a court before being required to bend their procedures to afford the due process rights of it's charges.

The Court only has access to the judicial mechanisms granted by law and finds itself in need of adjusting the set of considered-to-be-immutable procedures which litigants think of as *being* "due process", not *fulfilling* due process, which is actually simply fundamental fairness. And while it seems counterintuitive for an adversarial Court of law to operate with the custodiality of one party that a high school principal is required to grant it's charges, the court is well equipped to handle these unique due process requirements with relative ease.

First, a Piphus Hearing is a standardized and formalized procedure in school that was designed the way it is in order to give rights-holders a meaningful opportunity to be heard and to plead their case in order maintain the status quo before deprival.   The rules that have evolved through *Carey* on high school campuses are designed at the direction of the court to function

exactly like a TRO does in civil court.   We need not figure out a substitute mechanism in the FRCP for the Piphus Hearing, that standardized pre-deprival hearing is based on the model of the TRO in the first place, or at least indisputably it grew out of the exact same principals of due process as granted by the United States Constitution.

Next, the rules of procedure are properly bent to meet any due process requirements which aren't met in standard procedures as a result of a *Mathews* analysis and adjust court procedures to protect those interests.   Followed by *pro se* pleading requirements being relaxed to the extent they should as a result of *pro se* pleading liberal construction and the sliding scale of protection granted by it in the light of the meaningful right to bring grievances.   Multiplied by the reality that the class is effectively blind.

An independent analysis of an individuals rights and fundamental interests in this context would approximate those shown in the description of the rights granted in the Piphus Hearing above.

The only thing to add to accord our *Carey* protections in this trial would be that the pleadings here would have to be liberally construed, then asked for clarification if necessary by the Judge in order to educate the litigant about their rights, and indefinitely amendable.

**2)      DENIAL OF RELIEF WILL RESULT IN IRREPARABLE INJURY**

Again, the relief I seek is to be immediately accorded of the constitutional right which UCF intentionally deprives me of, my "absolute" right to a fair hearing in plain language where I offer evidence BEFORE any of my property or liberty interests are deprived.   In this exceedingly rare instance, one which will not occur again because this will be Dual Enrollment's

"*Brown v. BoE*" & "*Carey*", the landmark case which delineates rights and responsibilities and offers guidance that even UCF would dare not breach.

That injury here starts out at the "absolute" constitutional violation due for in and of itself, one which is due for nominal damages pursuant to *Carey* which I bring the underlying case under.  The harm is irreparable as a matter of law because deprivation of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  And in the instant case, the fundamental rights to liberty and property as well as the constitutional right to due process itself have absolutely been abused for more than minimal periods of time.

Of course there is significantly greater irreparable injury being knowingly inflicted by UCF here.

In addition to the "absolute" injury due process interest which grants nominal damages here, the class suffers further irreparable injury to the liberty and property interests inherent in the program that the withheld due process was constitutionally required to secure for this facial class since 2002.

Beyond my "absolute" nominal-damages injury, I have suffered irreparable injury to a nexus of liberties which has never been described in legal writing.

From the mundane and textual constitutional violations of:

- UCF's failure to serve notice prior to deprival which would the hard bar set for nominal damages in my case.

- To the fact that there is at least three times as much property being abused from me on a daily basis than Jarius Piphus was deprived of for eight days.

- To the fact that statutorily granted liberty is being facially abused which is proven turning on a legal analysis of the terms "is required" vs "may not be required"
- To the fact that they have invidiously abused me of the most precious and important of liberty interests which are described in caselaw in *Roth*. Liberty "denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge" *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) (internal citations omitted)"

To what UCF even admits is truly surreal:

- The clear and indisputable fact that I was deprived of the right to use those liberties to save my own life and maybe even do my little part in fighting the global pandemic like other academics.
- To invidiously sending my namesake to his grave thinking I had done wrong in attacking an innocent UCF after he spent a lifetime building it through a corporate relationship; and currently injuring my relationship with my dying grandmother this and every day that she is not made aware of the truth about the legal relationship of the parties.   She cries herself to sleep worried about what she believes is the truth, that I lost the best opportunity I would ever get in my life for attacking another of her husband's babies, UCF, wrongly.

A more precise inventory of the liberty and property interests which are collaterally abused and irreparably injured by UCF's intentional deprivation of due process is found in the Amended Complaint, Motion for Preliminary Judgement, and first mandamus petition.

The legal reasoning and authorities supporting my understanding is unquestionably correct to a passing degree if liberally construed.

But this is not a game about theoretical legal rights and interests, or whether and to what degree UCF will claim each of these things is incorrect or does not constitute "irreparable injury" in legal parlance. Because the entire class is tangibly injured in a way that can never be made whole each and every day that they are unable to sign up for one of UCF's online Dual Enrollment courses as provided by law. Each and every day, rightful access to over 4,000 child years of schooling is lost forever; and right now it is particularly injurious as people look for ways to both save money and add value to distance-based educational options. And peoples lives have been irrevocably changed because they missed meeting an illegal requirement by three points on one of three parts of PERT, or they were a home education student with a 3.0, or they met all etc requirements and UCF just exercised their Arbitrary Discretion on and did not allow to participate in the program without any due process.

The injuries shown above are clearly and indisputably irreparable.

3) **THE THREATENED INJURY OUTWEIGHS THE HARM THE RELIEF WOULD INFLICT ON THE NON-MOVANT**

UCF can suffer no pecuniary harm once this TRO is issued. Quite to the contrary, UCF can only be benefitted as are guaranteed payment to the degree allowed by law by the local board.

Furthermore, *Padilla* is binding on the issue of the balance of equities as shown below:

> "When the Government is a party to the case, the public interest and balance of equities factors "merge." The equities favoring Plaintiffs continue to be: The deprivation of their constitutional rights ... it is always in the public interest to prevent the violation of a party's constitutional rights." *Padilla v. U.S. Immigration and Customs Enforcement*, 387 F.Supp.3d 1219 (2019) (internal cites omitted). (emphasis supplied)

4)	THE ORDER WOULD SERVE THE PUBLIC INTEREST

In addition to the factors being merged from above, the public interest of providing this due process procedural protection of the Piphus Hearing analog of a TRO would serve the public interest in all the ways that are documented in the section by the same name of the preliminary injunction motion which this TRO and the "absolute" due process protection granted in *Carey* rightfully secure.

Furthermore, the Public Interest lie in liberty and "[t]he liberty mentioned in that [Fourteenth] amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned."  *Allgeyer et al. v. State of Louisiana*, 165 U.S. 578.

## CONCLUSION

"**LIBERTY IMPLIES THE ABSENCE OF ARBITRARY RESTRAINT**"

*Chicago, B. & Q. R.R. v. McGuire*, 219 U.S. 549, 567, 570 (1911). See also *Wolff Packing Co. v. Industrial Court,* 262 U.S. 522, 534 (1923).

But the government does have the right to deprive your unalienable rights to life, liberty or property, just not without due process of law.   That means that the right to due process as granted in *Carey* is the only "absolute" right in the United States Constitution.   Without it, literally nothing else matters; due process of law is the only thing standing between the

enjoyment of our natural & fundamental rights and Blackstone's tyranny of arbitrary government.

WHEREFORE, and based on the preceding, the class and I humbly seek a TRO granting the fair opportunity to be heard and offer evidence prior to any further deprivation of my fundamental rights thereby maintaining the status quo which due process stands to secure, including the property and liberty interests documented in the preliminary injunction motion and amended complaint which I am not yet in possession of.

The TRO should also describe the procedures the Court will use to ensure the minimum dictates for procedural protections are accorded when the liberty or property interest in a state's statutorily-granted basic education benefit is at stake which include (1) proper notice; (2) meaningful opportunity to present evidence and be heard; (3) in a meeting for the explicit and noticed purpose of allowing that opportunity to present evidence and be heard (4) in plain language; (5) with no procedural barriers; (6) with some amount of legal assistance; and prior to the deprivation.

Ultimately, though this prayer be inartfully pleaded, what I seek is the fair opportunity to be heard that *Carey v. Piphus* grants to me & the class before the program is deprived from me, and I seek the right to seek that hearing in plain language.   And it must be either analogous to or at least accord protections for the same interests as is described in *Carey*.   And the meaningful opportunity to be heard must be accorded immediately in order to be meaningful.   And to be clear, I require a TRO because it is the only Piphus Hearing analog that I know of.   Any circumstance in which the Piphus protections are accorded of my being able to offer evidence

and be fairly heard prior to the intended deprivation of my due process, liberty and property rights today will suffice to accord the due process right of the class which I come to assert.

In this TRO I seek my *Carey* protections in full, because they are being intentionally withheld from me.

Respectfully Submitted October 15, 2020,

                                                   William Henry Hamman
                                                   1209 N. Westmoreland Dr.
                                                          Orlando, FL 32804
                                                              407-630-1349

### **CERTIFICATE OF 3.01(g) COMPLIANCE**

I have not complied with Rule 3.01(g) in this instance as I do not believe it is required when seeking an ex parte TRO

                                                   William Henry Hamman
                                                     1209 N. Westmoreland Dr.
                                                          Orlando, FL 32804
                                                               407-630-1349

### **CERTIFICATE OF SERVICE**

I do hereby certify that as of this application a true and correct copy of the forgoing has been emailed to UCF's counsel of record on October 15, 2020.

Patrick M. Muldowney, Esq.                Ashley M. Schachter, Esq.
Florida Bar No.: 0978396                     Florida Bar No.: 0119374
E-Mail: pmuldowney@bakerlaw.com      E-Mail: aschachter@bakerlaw.com

                                                   William Henry Hamman
                                                     1209 N. Westmoreland Dr.
                                                         Orlando, FL 32804
                                                              407-630-1349