UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIAM HENRY HAMMAN**
      **Plaintiff;**

**v.**                            **Case No.: 6:20-cv-1279-Orl-41LRH**

**THE UNIVERSITY OF CENTRAL**     **Plaintiff's Motion for TRO**
**FLORIDA BOARD OF TRUSTEES**     **and Supporting Memorandum**
      **In their individual and**
      **official capacities,**
      **Defendants**
_____/

## PLAINTIFFS MOTION FOR TRO AND MEMORANDUM OF LAW REGARDING VIOLATION OF FLORIDA'S SUNSHINE LAWS

Plaintiff Will Hamman applies for TRO pursuant to Rule 65, *Fed.R.Civ.P.* seeking to enjoin UCF to honor it's duty to properly notice it's meetings under Florida's Sunshine Laws.

## IMMINENCE

UCF's Board of Trustees, due to a failure to post reasonable Public Notice of it's recent special board meeting on June 30, has rendered that meeting's actions invalid by law.    Failure to perfect Public Notice is a failure of an open meeting, and no public action may be legally taken outside the Sunshine.    The main item which was finalized at the meeting was the budget proposal for Legislative Budget Requests for 2022 - 2023, and that was a proposal to become a "University of Distinction" as the attached agenda states.    The LBR which was not legitimately finalized at that meeting seeks nearly 30 million dollars in additional funding for the year, and the program will then grant 18 million annually each year thereafter.    This was the substantial impetus for the special meeting in the first place - the LBR must be submitted by July 9 for this year and the recurring 18 million dollar grant cannot be joined in later years of the program -

July 9 is the absolute deadline to file the LBR for access to 30 million dollars for 2022 - 2023 & 18 million dollars per year for years to come.    Once again, UCF's Board of Trustees has not legally finalized the submission, so the LBR is procedurally illegitimate and void.    The July 9 deadline for the LBR is found on Appendix page 5.

Therefore UCF's Board must be enjoined with sufficient time left for UCF to reasonably notice per emergency meeting authorization of *Florida Statute* 120.525 on July 8 in order to notify the public a minimum of 24 hours prior to a bona-fide Emergency Board meeting on July 9th in order to vote on the LBR so that it is lawfully valid on submission date.

There is a second source of imminence here supporting TRO in favor of preliminary injunction, as is shown below UCF has also committed Fraud Upon the Court as part of a quasi-judicial report which is currently abusing my individual rights.

## INTRODUCTION TO UCF'S VIOLATION OF FLORIDA'S SUNSHINE LAWS

The first step for the UCF Board of Trustees to hold a lawful meeting is to make the meeting "open" by providing reasonable Public Notice.    Any failure by the Board to provide reasonable Public Notice for any one of it's meetings is a violation of Florida's Sunshine Laws, intentional or not.    The caselaw below proves that whether intentional or not, any business conducted at a meeting which does not comport with the law is invalid & procedurally void.

UCF held a special Board Meeting on June 30 and failed to publish reasonable public notice for the meeting.    Whether it was intentional or done in haste is irrelevant to the law granted in binding precedent - the "mere showing" of a violation renders any business transacted at that meeting invalid.    Even if the error was completely innocent, the fact that there was no

Public Notice in the newspaper, no posting of that notice to Florida's Administrative Register,

nor timely posting of the agenda means that no legitimate action was taken at the June 30 Board

meeting.

> A violation need not be "clandestine" in order for a contract to be invalidated because "the principle that a Sunshine Law violation renders void a resulting official action does not depend upon a finding of intent to violate the law or resulting prejudice." *Port Everglades Authority v. International Longshoremen's Association, Local* 1922-1, 652 So. 2d 1169, 1171 (Fla. 4th DCA 1995). But see *Killearn Properties, Inc. v. City of Tallahassee*, 366 So. 2d 172 (Fla. 1st DCA 1979), cert. denied, 378 So. 2d 343 (Fla. 1979)

Any vote taken, any official action taken whatsoever in the June 30 special meeting -

from policy decisions shaping the university's course, to the awarding of contracts; everything

that was conducted in that meeting is invalidated because the Board failed to comply with the

notice requirement of *Florida Statute* 286.011(1).

> The type of notice that must be given is variable, however, depending on the facts of the situation and the board involved. In some instances, posting of the notice in an area set aside for that purpose may be sufficient; in others, publication in a local newspaper may be necessary. In each case, however, an agency must give notice at such time and in such a manner as will enable interested members of the public to attend the meeting.
> Ops. Att'y Gen. Fla. 04-44 (2004) and 80-78 (1980)

One week prior to the June 30 special meeting, this additional date quietly showed up on

the Boards "Meetings" web site.    UCF has admitted that their only public notice for this

meeting was the addition of a meeting date amidst a string of identical-looking previously

scheduled meeting dates on a web page one week prior to the meeting on it's own web site, and

there was no agenda or even general statement of meeting purpose posted one week out as

required by law.

The only issue here is whether the type of notice that UCF granted, in this case discretely posting an additional date on an agency web page several layers down from the main domain UCF.EDU, meets the definition of "reasonable Public Notice"   As shown below, there is no hard line beyond the fact that reasonable notice must "enable interested members of the public to attend the meeting."   UCF's  posting on an internal website several layers down fails to meet the bar for reasonable public notice because my parents were literally the only members of the public to attend and offer public comment.   There is significant precedent proving that UCF was required to have posted this Public Notice in the Orlando Sentinel, and was equally required to have documented & completed the act of making reasonable Public Notice by posting it on Florida's Administrative Register database as demanded by *Florida Statute* 120.525(1).   The binding caselaw precedent and Attorney General's Advisory Opinions are dissected to show that the instant case meets the bar for relief for each authority of how UCF is required to have published in the Orlando Sentinel and the F.A.R.

**THEREFORE** imminence is shown which necessitates the issuance of this TRO prior to the opportunity for a regularly scheduled, noticed hearing of a preliminary injunction hearing.

The remaining single ground I need to show for issuance of application for TRO in a Sunshine Laws violation is the "mere showing."   The following citation is quoted from an article published by the Florida Bar titled "Overview of the Sunshine and Public record Laws":

> While normally irreparable injury must be proved by the plaintiff before an injunction may be issued, in Sunshine Law cases the mere showing that the law has been violated constitutes "irreparable public injury." *Town of Palm Beach v. Gradison*, 296 So. 2d 473 (Fla. 1974); and *Times Publishing Company v. Williams*, 222 So. 2d 470 (Fla. 2d DCA 1969), disapproved in part on other grounds, *Neu v. Miami Herald Publishing Company*, 462 So. 2d 821 (Fla. 1985). The plaintiff's burden is to "establish by the greater weight of

the evidence" that a meeting which should have been held in the sunshine took place on the date alleged. *Lyon v. Lake County*, 765 So. 2d 785, 789 (Fla. 5th DCA 2000).

An injunction is issued in Sunshine Laws claims on the "mere showing" of a violation of the law.   That "mere showing" of violation has been deemed to show that "irreparable public injury" is *per se* inherent.

**THEREFORE** the only other ground necessary to succeed on this motion for TRO is the "mere showing" of a violation of the law, which I have done above and thoroughly substantiate with binding precedent & legal argument below.

## THE CLAIMS I BRING IN THIS MOTION

1. That UCF's Board of Trustees does not provide "reasonable" Public Notice of it's meetings.

2. That UCF's Board of Trustees does not include the quasi-judicial clause within it's Public Notice.

3. That UCF's Board of Trustees has violated the open meetings requirement of the Sunshine Laws through the side meeting.

4. That UCF's Board of Trustees has violated it's duty of Candor to the Court in a quasi-judicial governmental procedure.

## THE INJUNCTIVE RELIEF I SEEK IN RELATION TO EACH CLAIM

a. An order enjoining UCF's Board of Trustees to immediately and ongoingly file Public Notice of it's Board meetings in the Orlando Sentinel per *Florida Statute* 286.011(1), and further enjoining UCF to publish the same in Florida's Administrative Register pursuant to *Florida Statute* 120.525(1).

b.      An order enjoining UCF's Board of Trustees to immediately and ongoingly include the quasi-judicial clause within the Public Notice of it's Board meetings.

c.      An order enjoining UCF's Board of Trustees to confine all discussions between Board members on Board matters, and all business of the Board, to be transacted in the Sunshine at properly noticed and open meetings.

## THE GROUNDS ON WHICH I BRING THIS MOTION

1.      Imminence is shown because the actual harm emanating from this procedural error will be manifest by 5 pm today July 7 if UCF fails to act toward legitimizing the June 30 business, and the harm to UCF's programs will truly be irreversible.    Imminence is also shown below for the injury to my private rights because of the fraudulent quasi-judicial report I received from the President and the open meeting violation of the "side meeting" which occurred between my dad & two *ex officio* BoT members on June 17 and outside the Sunshine in relation to my individual rights.

2.      I meet the burden of a "mere showing" of violation in regards to the Public Notice for the June 30 special meeting, and this case meets the burden of a "mere showing" of a violation in regards to the breakout meeting at the June 17 meeting and also the Fraud Upon the Court included in the quasi-judicial Provost & President's report which I received June 29 as documented below.

3.      While a "mere showing" obviates the need to show the remaining three factors required for preliminary injunction, I address them each in the memorandum as an opportunity to prove what is per se presumed in Sunshine Laws claims.    While not necessary, I have shown and will further document how each of these violations is causing real-world

irreparable harm to the university, to the students, and to the citizens the university would have served through these grants included in the budget voted on in the illegitimate June 30 meeting, groups which include schoolchildren, teachers, and even military veterans with P.T.S.D.

4.    Again, while not necessary, I address the balance of equities which squarely favor myself and the public over UCF's inconvenience of posting "reasonable Public Notice"

5.    Issuance is clearly in the public interest


## MEMORANDUM OF LAW

### I.    INJUNCTIVE RELIEF IS PROPER

First, authorities and legal argument for injunctive relief being proper in Sunshine Laws claims.   The following is taken from the "GOVERNMENT-IN-THE-SUNSHINE-MANUAL, A Reference For Compliance with Florida's Public Records and Open Meetings Laws" Volume 43, 2021, published by Florida's Attorney General.    It can be found online at https://myfloridalegal.com/webfiles.nsf/WF/MNOS-B9QQ79/$file/SunshineManual.pdf   ( It must be noted that this is itself adapted from a Florida Bar article located at https://www-media.floridabar.org/uploads/2018/09/18-RW-Opengovernmentoverview.pdf  )

The article is authoritative on the requirements and procedures for injunctive relief in Sunshine Laws cases and they do not include the traditional "Success on the Merits / Irreparable Injury / Balance of Equities / Public Interest analysis.

Section 286.011(2), Florida Statutes, states that the circuit courts have jurisdiction to issue injunctions upon application by any citizen of this state.    The burden of prevailing in such actions has been significantly eased by the judiciary in sunshine cases.

While normally irreparable injury must be proved by the plaintiff before an injunction may be issued, in Sunshine Law cases the mere showing that the law has been violated constitutes "irreparable public injury." *Town of Palm Beach v. Gradison*, 296 So. 2d 473 (Fla. 1974); and *Times Publishing Company v. Williams*, 222 So. 2d 470 (Fla. 2d DCA 1969), disapproved in part on other grounds, *Neu v. Miami Herald Publishing Company*, 462 So. 2d 821 (Fla. 1985). The plaintiff's burden is to "establish by the greater weight of the evidence" that a meeting which should have been held in the sunshine took place on the date alleged. *Lyon v. Lake County*, 765 So. 2d 785, 789 (Fla. 5th DCA 2000).

Although a court cannot issue a blanket order enjoining any violation of the Sunshine Law based upon a finding that the law was violated in particular respects, a court may enjoin a future violation that bears some resemblance to the past violation. See *Board of Public Instruction of Broward County v. Doran*, 224 So. 2d 693, 699-700 (Fla. 1969), *Port Everglades Authority v. International Longshoremen's Association, Local 1922-1*, 652 So. 2d 1169, 1173 (Fla. 4th DCA 1995), and *Citizens for Sunshine, Inc. v. Martin County School Board*, 125 So. 3d 184 (Fla. 4th DCA 2013). See also *Wood v. Marston*, 442 So. 2d 934 (Fla. 1983) (trial court's permanent injunction affirmed). Compare *Leach-Wells v. City of Bradenton*, 734 So. 2d 1168, 1170n. 1 (Fla. 2d DCA 1999), in which the court noted that had a citizen appealed the trial court's denial of her motion for temporary injunction based on a selection committee's alleged violation of the Sunshine Law, the appellate court "would have had the opportunity to review this matter before the project was completed and to direct that the City be enjoined from entering into a final contract with the developer until after such time as the ranking of the proposals could be accomplished in compliance with the Sunshine Law."

The future conduct must be 'specified, with such reasonable definiteness and certainty that the defendant could readily know what it must refrain from doing without speculation and conjecture.' *Port Everglades Authority v. International Longshoremen's Association, Local 1922-1*, supra, quoting from Board of Public Instruction v. Doran, 224 So. 2d 693, 699 (Fla. 1969).

1.    *Florida Statute* 286.011(2) explicitly authorizes injunctions as appropriate relief for

     Sunshine Laws claims.

2.    The Florida Bar states that:

          "The burden of  prevailing in such actions has been significantly eased by the
          judiciary in sunshine cases."

3.    *Town of Palm Beach v. Gradison*, 296 So. 2d 473 (Fla. 1974); and *Times Publishing*

*Company v. Williams*, 222 So. 2d 470 (Fla. 2d DCA 1969) grant that:

> <u>"While normally irreparable injury must be proved by the plaintiff before an injunction may be issued, in Sunshine Law cases the mere showing that the law has been violated constitutes 'irreparable public injury.'"</u>

*Hobbs v. Weinkauf,* below, summarizes the holding in *Times Publ'g Co. v. Williams*, 222

So.2d 470, 476

> "holding that statutory provision granting circuit court jurisdiction to issue injunction for violation of a statute "is the equivalent of a legislative declaration that a violation of the statutory mandate constitutes an irreparable public injury" and, therefore, "a mere showing that the statute has been or is clearly about to be violated fully satisfies" the requirement of a showing of irreparable harm for injunctive relief"
> *Hobbs v. Weinkauf*, 940 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2006)

In *Gradison*, the Sunshine Laws violation was that a committee which was

formed by the Town Council was subject to the Sunshine Laws and open meetings

requirements even though they were just advisory and the actual board members would

discuss all of this in the open.    The instant case is a violation of Public Notice which

injures each interested person in real and irreparable ways.    The instant case meets the

bar for injunctive relief set in *Gradison*.

4.    *Board of Public Instruction of Broward County v. Doran*, 224 So. 2d 693, 699-700 (Fla.

1969)  and others cited above grant that

> <u>"Although a court cannot issue a blanket order enjoining any violation of the Sunshine Law based upon a finding that the law was violated in particular respects, a court may enjoin a future violation that bears some resemblance to the past violation."</u>

The law was violated in "particular respects" (denial of Reasonable Public

Notice,) and I seek a TRO which enjoins UCF to not engage in specific conduct (deny

Reasonable Public Notice,) that is the same as previous violations.    I meet the bar here

as well, I seek an injunction enjoining UCF from future violations which are exactly &

specifically the same.

5.      *Port Everglades Authority v. International Longshoremen's Association, Local 1922-1,*

supra, quoting from Board of Public Instruction v. Doran, 224 So. 2d 693, 699 (Fla.

1969) grants that:

> The future conduct must be 'specified, with such reasonable definiteness and
> certainty that the defendant could readily know what it must refrain from doing
> without speculation and conjecture.'

The future conduct which I seek enjoined is very specific - to publish reasonable

Public Notice by publishing in the Public Notices section of the Orlando Sentinel and

posting Public Notice one week in advance to the F.A.R. Register.

**THEREFORE**

Injunctive relief is the proper remedy in this Sunshine Laws case, including TRO relief if

imminence is shown.

**II.      CLAIM #1 - UCF's VIOLATION OF THE SUNSHINE LAWS REGARDING
PUBLIC NOTICE OF THE JUNE 30 SPECIAL MEETING**

The claim is that the Sunshine Law was violated by UCF's quiet posting of the additional

June 30 date amongst a string of identical looking dates for previously scheduled meetings, a

posting which did not have an agenda or any statement of the purpose of the meeting until just

before the meeting, and a posting which was not  added to Florida's F.A.R. registry per *Florida*

*Statute* 120.525(1).

The grounds upon which I bring this claim substantiated.

1.    IMMINENCE - The effect of UCF's illegal meeting on June 30 is that their actions taken

at the meeting are illegitimate.    This included discussing & voting on the universities'

Legislative Budget Requests which UCF is counting on funding the future development

& success of the school, and that resolution must be made legal by meeting and voting on

it in the Sunshine before end of day July 9.    If UCF does not substantially act today, they

will not have sufficient time to perfect Public Notice even 24 hours before an emergency

meeting which would have to be declared an actual emergency in order to be allowed to

notice in 24 hours IF notice is of the nature of an emergency in the press releases & etc.

The timing of the events above is clear from the agenda which was posted at the

last minute on page 4-5 of the agenda, Appendix page 5.    This LBR is necessary to

become a "University of Distinction" and it is due "July 9"    "If a university should

choose not to submit a University of Distinction LBR, no funding will be included for

that university in the BOG's request for the State University System, except for the

university's share of performance funds."

The danger of losing access to the proposal that will grant UCF more than 18

million dollars a year, and which is intended to build UCF into a University of

Distinction, will be irretrievably lost.

THEREFORE - IMMINENCE IS SHOWN

2.    SUCCESS ON THE MERITS

Again, this factor is met upon a "mere showing," and that is because a mere showing is all that it takes to prove a violation of the law.

There are many ways to prove that there is a mere showing that UCF has failed to provide Reasonable Public Notice - there are cases which are cited as being violations of the notice requirement of the Sunshine Laws & this case is more favorable to relief than those cases.

The following authority from the Florida Bar article in the section titled "What are the notice and procedural requirements of the Sunshine Law."

> The type of notice that must be given is variable, however, depending on the facts of the situation and the board involved. In some instances, posting of the notice in an area set aside for that purpose may be sufficient; in others, publication in a local newspaper may be necessary.    In each case, however, an agency must give notice at such time and in such a manner as will enable interested members of the public to attend the meeting. Ops. Att'y Gen. Fla. 04-44 (2004) and 80-78 (1980)

This claim turns on whether it is "reasonable Public Notice" for UCF quietly add a date, to a similar-looking string string of dates, on a page several clicks down from UCF.EDU, of a meeting which had no statement of general purpose when added barely a week prior to the meeting, for a meeting which no other members of the public besides my parents attended.    It is not reasonable, as a brief comparison of the cases which got relief with the instant case shows that UCF has a duty to publish in a newspaper and the F.A.R. registry under the law.

a.    The Bar has determined, as a result of the two Attorney General Advisory
     Opinions cited above, that there is a continuum of procedural requirements for a
     Board to consider when choosing what is "reasonable Public Notice".    There is

no hard and fast rule, so that for instance a veterinary regulation board which
regulated Veterinarians to log in to a Board-controlled regulatory web site once a
week would be an appropriate place to post a notice for people who would be
regulated by that (if press releases were made available for the interests of the
press of course.)   Point being that there is a continuum where a quiet posting on
one agencies web site in a recursed location would meet the definition of
"reasonable Public Notice" under the law, where another agency in the same town
could be required to meet a whole different set of needs with it's Public Notice.

b.    The Board of Trustees for the largest university in the nation, controlling the
largest budget of any state agency in the Orlando area, with untold citizens having
completely divergent interests but a right to be noticed of this meeting, about the
thing that *Brown v. BoE* calls the most important function of state government, the
education of it's children [1] - would by intuition alone fall at the extreme opposing
end of the spectrum of procedural requirements for what constitutes "reasonable
Public Notice."

c.    There are many cases which prove that UCF has the most strict procedural
requirements to inform interested parties' of their right to attend.   The yard stick
by which they are each judged is whether or not the type of notice is reasonable is
if it was given <u>at such time and in such a manner as will enable interested
members of the public to attend the meeting.</u>

_____

[1] "Today, education is perhaps the most important function of state and local governments. Compulsory
school attendance laws and the great expenditures for education both demonstrate our recognition of the
importance of education to our democratic society. " Brown v. Board of Education, 347 U.S. 483, 493
(1954)

d.    Quoted from the Attorney General's Sunshine Laws Compliance Manual Vol. 43

while citing *Transparency for Florida, Inc. v. City of Port St. Lucie*, 240 So. 3d

780 (Fla. 4th DCA 2018),

> The Sunshine Law does not define the term "reasonable notice," and
> "[f]ew cases address the question of what is reasonable notice."
> *Transparency for Florida, Inc. v. City of Port St. Lucie*, 240 So. 3d 780
> (Fla. 4th DCA 2018). In *Transparency*, the court referenced AGO 73- 170,
> which concluded that the type of notice given depends on the purpose for
> the notice, the character of the event about which the notice is given, and
> the nature of the rights to be affected.

The impact of the lack of reasonable public notice is shown by the fact

that there were zero members of the public in attendance physical attendance.

My parents and I were the only citizens who caught that there was an opportunity

to attend and make public comment, and there were at least three other citizens

who likely would have showed up to finish the Public Comment that they each

ran out of time telling the story that they had great motivation to share, issues of

significant importance about the university that I am certain the presenters would

have relished an opportunity to conclude because the clock ran out while they

read their prepared statements at the June 17 meeting.    Again, from the Attorney

General's "Manual on Sunshine Laws Compliance" Vol 43:

> <u>An individual challenging the adequacy of a meeting notice is not required</u>
> <u>"to allege and prove that some member of the public was not afforded an</u>
> <u>opportunity to attend the meeting because notice was not adequate,"</u>
> because this "is not an element of a cause of action for a Sunshine Law
> violation."    Transparency for Florida, Inc. v. City of Port St. Lucie, 240
> So. 3d 780, 787 (Fla. 4th DCA 2018)

"Having an individual who will allege and prove that they were not afforded an opportunity to attend because of notice" may not be an element of a cause of action, but we have three.   And yesterday when my mom & dad asked for inspection of the public records of the four Public Comment forms from the June 17 meeting, UCF's office of public records would neither comply nor reduce it's refusal to writing.   When he asked the Public Records officer to reduce the refusal to writing, he was threatened with having the police called for his asking that question.   So, were it not for defendant's actions which violate sec 119, public records, in a way that will become it's own complaint - we would have the email addresses that I need to contact those empassioned presenters from the June 17 meeting to prove this unnecessary element.   And to be clear, the reason that UCF's office of Public Records gave as being why they would not comply with that inspection request was specifically because we have been in litigation for five years.

e.    Continuing quotation from the Atty General's Sunshine Laws Manual,

> While the Sunshine Law requires only that reasonable public notice be given, a public agency may be subject to additional notice requirements imposed by other statutes, charters or codes. In such cases, the requirements of that statute, charter, or code must be strictly observed. Inf. Op. to Mattimore, February 6, 1996.
>
> For example, while the Sunshine Law does not mandate that an agency use a paid advertisement to provide public notice of a meeting, other statutes may specify publication requirements for certain actions. See Yarbrough v. Young, 462 So. 2d 515, 517n.1 (Fla. 1st DCA 1985) (Sunshine Law does not require city council to give notice "by paid advertisements" of its intent to take action regarding utilities system improvements, although the Legislature "has required such [paid] notice

for certain subjects," e.g., 166.041[3][c], F.S.). See also s. 189.015(1), F.S.
(notice requirements for meetings of the governing bodies of special
districts); and s. 1001.372(2) (c), F.S. (school board meetings).

Note the use of the terminology - that the paid publication is required "for

certain subjects," - and the subject dealt with by local school boards is both A) the

same as the Board of Trustees but on a much smaller scale, & B) requiring of a

paid advertisement.

f.      Concluding with one last citation from the Attorney General's Manual on

Sunshine Law Compliance,

> The notice procedures set forth above should be considered as suggestions
> which will vary depending upon the circumstances of each particular
> situation. See AGO 73-170 ("If the purpose for notice is kept in mind,
> together with the character of the event about which notice is to be given
> and the nature of the rights to be affected, the essential requirements for
> notice in that situation will suggest themselves"). See also AGOs 00-08,
> 94-62 and 90-56.

With the purpose in mind that the UCF Board meetings includes the exact

same subjects and is therefore at least as worthy of procedural protection as a

school board who is required to publish in a paid publication, it is obvious that

UCF failed to properly notice the June 30 meeting

THEREFORE A "MERE SHOWING" OF A VIOLATION HAS BEEN MADE

Given the entirety of the above, it is obvious that UCF had a duty to publish this

notice in the Orlando Sentinel and Florida's Administrative Register, and it did not.

Florida's Supreme Court summarizes the reality that we find UCF has

unfortunately placed itself in:

Notice is required even though meetings of the board are "of general knowledge" and are not conducted in a closed door manner. *TSI Southeast, Inc. v. Royals*, 588 So. 2d 309, 310 (Fla. 1st DCA 1991). **<u>"Governmental bodies who hold unnoticed meetings do so at their peril."</u>** *Monroe County v. Pigeon Key Historical Park, Inc.*, 647 So. 2d 857, 869 (Fla. 3d DCA 1994)

4.      IRREPARABLE INJURY

Again, this factor is unnecessary because a "mere showing" constitutes

"irreparable public injury" *per se*.    But the peril here is not just the intrinsic injury to

democracy that violation of the Sunshine Laws constitutes.    The peril of actual injury to

the university here is real, as the injury to the students and faculty who would benefit

from these programs is real, and the injury to the citizens those programs are intended to

serve are real - groups which substantially include veterans - our heroes; and our children

whose Liberty those heroes risked their lives for.    I pray your help your Honor to keep

the nefarity which has injured me from injuring all of them.

5.      BALANCE OF EQUITIES clearly falls on the side of protecting the UCF community

and public at large from this injury.

> "When the Government is a party to the case, the public interest and balance of equities factors "merge."    The equities favoring Plaintiffs continue to be: The deprivation of their constitutional rights ...   it is always in the public interest to prevent the violation of a party's constitutional rights. "    *Padilla v. U.S. Immigration and Customs Enforcement*, 387 F.Supp.3d 1219 (2019)    (internal cites omitted). (emphasis supplied)

6.      PUBLIC INTEREST - asks if a procedure costs more than it's worth financially to the

public interest.    This is the public interest of $18 million dollars per year as a state

benefit if UCF is not properly coerced by tonight.

**CONCLUSION OF CLAIM #1 REGARDING REASONABLE PUBLIC NOTICE AT JUNE 30 BOARD MEETING**

UCF has failed to publish "reasonable Public Notice" and in so doing has invalidated the business at it's June 30 special meeting.    At 6:30 last night as we were researching the Sunshine Laws, we realized that these are the inexorable realities which will come out sooner or later; and that if we are unsuccessful at raising the alarm within the next few hours, the university we are fighting for will have it's future gutted through no fault of those who will be left behind to deal with the fallout of this.

I therefore ask the Court to consider the following "claims" to be only notes that will be fleshed out & submitted as a supplement to this application.    I leave the information in to inform the Court of what the coming Supplement to this application for TRO will contain.

I pray the Court overlook the many ways that this filing must be inartful and put aside any past differrences here because this is a matter which affects everyone's rights in this instance - this is "irreparable *public* injury", not just mine.    And these issues are well litigated where the Dual Enrollment program is not

**III.    NOTES FOR UPCOMING CLAIMS #2, 3, & 4 - UCF'S OTHER VIOLATION OF THE SUNSHINE LAWS - ABUSING MY INDIVIDUAL RIGHTS DURING THE JUNE 17 MEETING**

Florida's Sunshine Laws form the foundation of our open and participatory democracy. Following them to the letter is a ministerial duty of all public Boards.    The basic requirements for all public boards are:

1) open meetings

2) publicly noticed

3) minutes recorded

A component of "open meetings" is a right to make Public Comment, and UCF allows members of the public to comment for up to three minutes at the beginning of each meeting as a means of meeting it's duty to open meetings.

Armed with three minutes and the microphone in front of the Board of Trustees at their meeting dated June 17, 2021, my dad proceeded to read a one-page prepared statement which quoted Florida Statute 1007.271 and quoted UCF's policies posted on their DualEnrollment web page which textually violate these laws.  Exhibit 2, Appendix page 81    He explained how this program was the legal equivalent of Advanced Placement, a program everyone immediately recognized as being a government-funded basic-education program which was constitutionally protected.

*We had been heard…*

Immediately upon completion of that presentation, President Cartwright's Executive Assistant Mike Kilbride approached my dad and asked for & received a copy of what he had presented.    This was a one page presentation quoting the laws which included a single page from UCF's Dual Enrollment web page printed three hours earlier.    They went outside the Board meeting where E.A. Kilbride asked if maybe we had tried to bring these things to anyone's attention previously and maybe they did not return our call or something?    My dad politely explained that we were in litigation for five years over this, and how I was never given my procedural due process.    My dad stated explicitly that the one thing that we wanted was procedural due process where the university stated why I could not attend even though their policies were direct violations of *Florida Statute* 1007.271.

Immediately after the meeting concluded, two members of UCF's board (*ex officio*
boardmembers Provost Johnson & President Cartwright) approached my dad and held a side
meeting with him which did not comport with the Sunshine Laws in several ways, a side meeting
which was intended by the two boardmembers to discuss my individual rights.   It was "illegal"
for that conversation between two board members to occur outside the earshot of the public and
the press, and it was "illegal" for that *ad hoc* board meeting to have failed to notice myself & the
public appropriately with a Public Notice which included the quasi-judicial clause within as is
required by *Florida Statute* 286.0105.   The board violated my rights in the June 17 meeting by
failing to provide the notice of the side meeting demanded of them by law as a public board of
trustees - they simply failed to properly give notice, notice which included the quasi-judicial
verbiage.   This is 100% procedural and objectively verifiable - if UCF met their responsibility
to me they can show the Court a copy of that notice which had been properly posted which
includes the quasi-judicial notice.

He didn't really care about that, because President Cartwright assigned Provost Johnson
to the responsibility of investigating this issue and "fixing" anything that was wrong.   During
the course of their congenial conversation, Provost Johnson said he understood how this public
speaking was more fraught than usual because it is a quasi-judicial government procedure.
President Cartwright extended his hand and shook my dad's in order to seal the deal midwestern
style as he promised that anything illegal would be "fixed."   (FaceBook post morning of June
19, Exhibit XX, Appendix page XX).   We had now been promised all that  comes along with a
fair quasi-judicial investigation and official findings plus having UCF "fix" whatever needed
fixing.

On or before June 23 UCF's Board quietly changed it's Dual Enrollment web page to
remove the home education high school GPA requirement, the one that my lawsuit has demanded
be stricken for five years because it abused my constitutional rights.

On June 24, UCF's Board quietly added an additional upcoming date on it's "Board
Meetings" for a meeting one week later on June 30.    I have searched the Orlando Sentinel and
Florida's Administrative Register, the two places where UCF was required by law to post a
Public Notice of the Board meeting.    These searches covered June 17 through June 24.    UCF
did not post the Public Notice required by *Florida Statute* 286.011(1) & *Florida Statute*
120.525(1), a fact which rendered the June 30 special meeting invalid in entirety.    On June 29, I
received an email from the office of the President which stated that

> "As the President committed, Provost Johnson was responsible for looking into
> our Dual Enrollment program following your comments.    I have followed up
> with the Provost and he has verified that our program is compliant with the laws
> and regulations that govern the State University System"
> (email dated 6-29, Exhibit XX, Appendix page XX).

The quasi-judicial report misrepresented there being no policy which has violated a valid
statute.

The report does not mention that the Board had *removed* the policy most blatantly
violating *Florida Statute* 1007.271(13)(b)(2) between my claim on June 17 and the Provost's
report that the program was compliant on June 29.    The report and the web site clearly covered
up the fact that for five years I was unconstitutionally denied the right to participate in this
government-funded basic-education program as granted by law.    That report was the result of a
quasi-judicial proceeding to investigate, fact find and adjudicate the issue on behalf of the
university for the Court system.    And that report was fraud.    And it was an act which implicitly

admitted the wrongdoing which I have been suing UCF for intentionally inflicting on me for five years, the unjust deprivation of this program without procedural due process.

To summarize, the UCF Board of Trustees has clandestinely acted outside the Sunshine in order to perpetrate a fraud to further and cover up a five-year-long deprivation of my civil rights under color of law.

But it gets worse.   Much worse.

I cannot find record of any Public Notice having been posted for any UCF Board of Trustees meeting in either the Florida Public Notice database or the F.A.R. database as is required by Florida's Sunshine Laws.   Ever.

Which has procedurally rendered invalid every action UCF has ever taken since the Sunshine Laws were signed into law on July 1, 1993.   The Board members who were installed after that were not installed legally, and serving five-year terms means that by 2003 there would be no legally installed members on UCF's Board of Trustees.   And the Board's vote to recognize President Cartwright is also void and procedurally invalidated.

Meaning that I have been denied my right to participate in this constitutionally-protected program for five years by a Board that doesn't exist through policies they had no authority to enact.   The "Board" is just some people who are wielding illegitimate authority and doing so in the dark & in violation of Florida's Sunshine Laws, which is a penal statute.

Making my injury a *criminal* deprivation of civil rights under color of law.

**THE RIGHT TO SUPPLEMENT THIS MOTION IS RESERVED AND ANTICIPATED**

After I file for an extension to file my appeal because of the new evidence that UCF both covered up my deprivation of rights and implicitly admitted that the claims against the home

education GPA were meritorious by in fact rescinding the policy; I will substantiate the notes

above pertaining to claims #2, 3, & 4 with legal authorities and argument and submit that as a

supplement or combined amendment.

## THE INJUNCTIVE RELIEF I SEEK IN RELATION TO EACH CLAIM OF VIOLATION IS AS FOLLOWS:

a.    An order enjoining UCF's Board of Trustees to immediately and ongoingly file

Public Notice of it's Board meetings in the Orlando Sentinel per *Florida Statute*

286.011(1), and further enjoining UCF to publish the same in Florida's

Administrative Register pursuant to *Florida Statute* 120.525(1)

b.    An order enjoining UCF's Board of Trustees to immediately and ongoingly

include the quasi-judicial clause within the Public Notice of it's Board meetings

c.    An order enjoining UCF's Board of Trustees to confine all discussions between

Board members on Board matters, and all business of the Board, to be transacted

in the Sunshine at properly noticed and open meetings

d.    An order enjoining UCF's Board of Trustees to grant me a *Goss & Carey*

compliant procedural due process hearing to correct the error of the Provost's

report

Respectfully Submitted July 7, 2020

_____
William Henry Hamman
1209 N. Westmoreland Dr.
Orlando, FL 32804
407-630-1349